UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 13-10305-RWZ


DAVID ROMULUS, CASSANDRA BEALE, NICHOLAS HARRIS,
ASHLEY HILARIO, ROBERT BOURASSA, and ERICA MELLO,
on behalf of themselves and all other persons similarly situated

v.

CVS PHARMACY, INC.


MEMORANDUM OF DECISION

July 12, 2017


ZOBEL, S.D.J.

Plaintiffs Cassandra Beale, Nicholas Harris, Ashley Hilario, Robert Bourassa, and Erica Mello, former Shift Supervisors at CVS Pharmacy, Inc. ("CVS"), allege that they were required to remain in the store during their meal breaks when no other managerial employees were present and that they were not paid for this time. Based on these allegations, they claim CVS violated the Massachusetts Wage Act, Mass. Gen. Laws, ch. 149, § 148, and the Massachusetts overtime statute, Mass. Gen. Laws, ch.151, §§ 1A & 1B. In the instant motion, plaintiffs seek certification under Federal Rule of Civil Procedure 23(b)(3) of the following two classes:

> (1) All CVS Shift Supervisors who worked for an hourly wage in Massachusetts between July 25, 2008 and May 14, 2013 and were not paid for meal breaks during which CVS required them to remain in the store, for recovery of wages for unpaid meal breaks during that period (the "First Class"); and
> (2) All CVS Shift Supervisors who worked for an hourly wage in

Massachusetts between May 15, 2013 and the date of final judgment who were not paid for meal breaks during which CVS required them to remain in the store, for recovery of wages for unpaid meal breaks during that period (the "Second Class," or together with the First Class, the "Classes")

Docket # 115, at 1.

## I.      Background

The procedural history of this case is detailed in the First Circuit's decision,

Romulus v. CVS Pharmacy, Inc., 770 F.3d 67, 70–72 (1st Cir. 2014).  As relevant here,

named plaintiffs Beale, Harris, Hilario, Bourassa, and Mello each worked as Shift

Supervisors for defendant CVS Pharmacy, Inc. ("CVS"), in Massachusetts.  Beale,

Harris, Hilario, and Bourassa were employed by CVS at various times prior to 2013;

Mello was employed between approximately September 2013 and November 2014.

In their complaint, plaintiffs allege that CVS required Shift Supervisors and

Assistant Managers to remain in the store during their rest or meal breaks "when there

were no other managerial employees on duty and/or when there was only one other

employee on duty."  Docket # 75, at ¶ 2.  They allege that during this time, they were

not only required to stay in the store but were also interrupted to handle transactions

when necessary.  Nonetheless, plaintiffs allege, they were required to punch out during

these breaks and were not paid for their time.

Plaintiffs maintain that the combination of two CVS policies led to their unpaid

work during breaks: first, in that until at least May 2013,[1] CVS's "management coverage

---

[1]      Beginning on May 15, 2013, CVS implemented a "delegation tool" through which an employee such as a Shift Supervisor could temporarily delegate authority to another front store employee. See Docket # 130, at 10; see also Docket # 116, at 12.  Plaintiffs claim there are still "Wage Act claims despite the change in policy."  Docket # 116, at 13.

policy" prohibited Shift Supervisors from leaving store premises when no other "managerial employees" — Shift Supervisors, Managers, and Assistant Managers — were present; and second, in that under the "unpaid meal break" policy meal breaks must be unpaid.  See Docket # 16, at 7.

## II.      Standard

To obtain class certification, plaintiffs must first meet Rule 23(a)'s prerequisites: (1) that the class be so numerous such that "joinder of all members is impracticable"; (2) that common questions of law or fact exist; (3) that the representative parties' claims or defenses are typical of those of the class; and (4) that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  For class certification under Rule 23(b)(3), the court must find (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Id. 23(b)(3).  Plaintiffs must make an initial showing, by a preponderance of evidence, "that a proposed class satisfies the Rule 23 requirements."  In re Nexium Antitrust Litig., 777 F.3d 9, 27 (1st Cir. 2015).  "Once plaintiffs have made their initial showing, defendants have the burden of producing sufficient evidence to rebut the plaintiff's showing."  Id.

## III.     Discussion

"A district court must conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class."  Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003).  "Such an analysis will frequently entail 'overlap with the merits of the

plaintiff's underlying claim.' . . . That is so because the 'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'"  Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011)).

### A.     Ascertainability

The parties' first point of contention is whether the proposed classes are ascertainable.  Although not found explicitly in Rule 23, ascertainability is an "implied requirement" and "essentially require[s] a putative class to be ascertainable with reference to objective criteria."  William B. Rubenstein, Newberg on Class Actions §§ 3:1 (5th ed. 2017); see also Nexium, 777 F.3d at 19 (citing and quoting Rubenstein); Matamoros v. Starbucks Corp., 699 F.3d 129, 139 (1st Cir. 2012) ("The presence of . . . an objective criterion overcomes the claim that the class is unascertainable.").

Here, plaintiffs' class includes all Shift Supervisors who were not paid when they were required to stay in the store during meal breaks.  Such a determination could be defined by an "objective criterion," namely whether Shift Supervisors were in the store during an unpaid break when no other managerial employee was present.  Compare Matamoros, 699 F.3d at 139 (finding class "ascertainable under the objective standard of job titles and includes those who worked as baristas during the class period"), with Crosby v. Soc. Sec. Admin. of U.S., 796 F.2d 576, 580 (1st Cir. 1986) (finding class not ascertainable when "the determination of whether the right to a reasonably timely ALJ hearing and decision has been violated can be made only on a case-by-case basis").  However, whether "prior to judgment, it will be possible to establish a mechanism for distinguishing the injured from the uninjured class members," see Nexium 777 F.3d at

4

19, presents a more difficult question.

Because the class certification determination can be resolved based on commonality and predominance, I do not decide the answer to the latter question. See 7A Charles Alan Wright et al., Federal Practice and Procedure § 1760 n.10 (3d ed. 2017) ("Ascertainability is not a separate, preliminary requirement to maintain a class action, rather a court will adhere to a rigorous analysis of the rule requirements, which includes that a class must be adequately defined and clearly ascertainable."); cf. Donovan v. Philip Morris USA, Inc., 268 F.R.D. 1, 9 (D. Mass. 2010) (explaining that "the four traditional 23(a) factors embrace [the ascertainability] appraisal" and that "most courts do not independently address 'administrative feasibility' or 'ascertainability'").

## B. Rule 23(a) Requirements

Under Rule 23(a), plaintiffs must establish numerosity, commonality, typicality, and adequacy. See Fed. R. Civ. P. 23(a). There is no dispute regarding numerosity, and CVS does not challenge typicality and adequacy for the First Class.

### 1. Commonality

Rule 23(a)(2) requires plaintiffs show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has explained this means plaintiffs must "demonstrate that the class members 'have suffered the same injury'" and that "[t]heir claims must depend upon a common contention." Wal-Mart, 564 U.S. at 350 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 (1982)). "That common contention . . . must be of such a nature that it is capable of classwide

resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. "In other words, the commonality requirement is met where the 'questions that go to the heart of the elements of the cause of action' will 'each be answered either "yes" or "no" for the entire class' and 'the answers will not vary by individual class member.'" Raposo v. Garelick Farms, LLC, 293 F.R.D. 52, 55 (D. Mass. 2013) (quoting Donovan v. Philip Morris USA, Inc., No. 06-cv-12234-DJC, 2012 WL 957633, at *21 (D. Mass. Mar. 21, 2012)).

Here, plaintiffs maintain that commonality is established because of "a common policy" that "required Shift Supervisors to remain on store premises for unpaid breaks when no other managerial employee was present" for the First Class Period and "required [Shift Supervisors] to remain in their stores during unpaid meal breaks unless another manager or a fully trained non-managerial person was present" for the Second Class Period. Docket # 116, at 17 & n.15. They point to the following evidence as leading to such a policy:

1. The "Region 2 Authorized Keyholder and Management Coverage Policy" that states "[a] member of Front Store Management must always be present in the store while the store is occupied."[2] Docket # 117-16, at 2; Docket # 117-18, at 2; see also Docket # 117-12, at 11(CVS interrogatory response stating that "[i]n Massachusetts during the Class Period, CVS advised store management that a Store Manager, Assistant Manager, Store Manager Trainee, Shift Supervisor, or Night Crew Supervisor should be present in the store when the store was occupied").

---

[2]    "Front Store Management" includes the Store Manager, Assistant Store Manager, Store Management Trainee, Shift Supervisor A, Shift Supervisor B, and Night Crew Supervisor.  Docket # 117-16, at 2; Docket # 117-18, at 2.

2. The "Creating a Front Store Master Schedule" section of two "Learner's Guide[s]," which includes that "[a] member of the Management Team must be scheduled for each hour the store is open." Docket # 117-19, at 10; Docket # 117-20, at 7.

3. A CVS guide that provides for one unpaid 30-minute meal break for each six or eight-hour period worked. Docket # 117-21, at 7.

4. CVS's Employment Handbooks that instructs employees that though they "may wish to work through [their] meal or rest period . . . this is not allowed under many state laws," that in states that do allow this, employees "may not do so without prior approval of [their] supervisor," and that if they "do work through an unpaid meal period or [their] unpaid meal period is interrupted, [they] should notify [their] manager to ensure that [their] working time is correctly recorded in [their] pay." Docket # 117-22, at 4; Docket # 117-23, at 4; Docket # 117-24, at 4.

5. CVS's Employment Handbooks that do not specifically inform employees that remaining in the store constitutes "work," Docket # 117-22, at 4; Docket # 117-23, at 4; Docket # 117-24, at 4; Docket # 117-26, at 2.

Together, plaintiffs claim, this "evidence provides common proof of CVS' liability."

Docket # 116, at 17.

However, contrary to plaintiffs' contention, this evidence on its face does not provide common proof of an illegal practice such that it can resolve all of the putative class members' claims. The policies themselves do not necessitate that a Shift Supervisor remain in the store during unpaid meal breaks or that a Shift Supervisor must take a meal break when he or she is the only Front Store Manager present.[3] And

---

[3] For example, Bourassa testified that he took his meal break around noon, when the store manager typically arrived around 1:00 or 1:30 pm each day, because he could not wait until 1 pm to have lunch, Docket # 117-2, at 50–51, and that it was "common sense" not to leave the store when he was the only manager personnel present when taking lunch, id. at 25–26. That Bourassa took his meal break when no other management personnel was present was not mandated by CVS policy. Beale testified that the weekly work schedules did not indicate when employees should take their meal breaks, Docket # 117-1, at 16–17, but that she was required to stay in the store "between 60 and 70 percent of the time, maybe higher," id. at 39; Harris testified that he was required to remain in the store "[p]robably pretty close to 99

to the extent a situation does arise where the Shift Supervisor is required to remain in the store during a meal break, then CVS's policies suggest that he or she would be compensated.  See Docket # 117-22, at 4; Docket # 117-23, at 4; Docket # 117-24, at 4 (Employment Handbooks explaining that if employees "do work through an unpaid meal period or [their] unpaid meal period is interrupted, [they] should notify [their] manager to ensure that [their] working time is correctly recorded in [their] pay").

Accordingly, even assuming a policy that Shift Supervisors could not leave during a meal break when there was no other management personnel present, resolving whether Shift Supervisors were actually required to clock out — or were not paid — during these in-store meal breaks cannot be resolved through common evidence.[4]  Plaintiffs' testimony regarding whether they were paid for meal breaks for which they remained in store, and if not, why, varies by the individual.  For example, Beale testified that she was directed to clock-out for her in-store meal breaks and "believe[s]" that was part of the policy, Docket # 117-1 at 36.  Bourassa testified that CVS policy required him to clock-out during meal breaks in which he remained in the store, Docket # 117-2 at 44, and that when he would clock-in, he tried to keep himself

---

percent of the shifts," Docket # 117-3, at 17, "[b]ecause [he] was the only key holder and/or person who could override accounts, take money out of drawers," and put money into the safe, id. at 18; Hilario testified that she always remained in the store because she was the only supervisor present for her shift, Docket # 117-4, at 8; and Mello testified that she was the only supervisor on duty usually on the weekends or after 3 pm, but the shifts "were a lot heavier staffed during the days."  Docket # 117-5, at 31.  This testimony suggests that these situations arose out of individual store practices, not a company-wide policy.  Further, in Harris's case, he testified that his typical shift was 4 pm to 10 pm, calling into question whether he was entitled to an unpaid meal break at all.  Docket # 117-3, at 17.

[4]      I assume for purposes of this decision that remaining in the store during an unpaid break is considered work.  See DeVito v. Longwood Sec. Servs., Inc., No. SUCV201301724BLS1, 2016 WL 8200495, at *3 (Mass. Super. Dec. 23, 2016) ("The thirty-minute meal time is compensable unless the employee is relieved of all work-related duties.").

"at 40 hours and under, so as not to go over time, . . . and [he] didn't want to get the manager in trouble, so [he] would deduct the time and make it even," id. at 45.  Hilario testified that she took her unpaid meal breaks in the store because that store manager instructed her to do so, Docket # 117-4 at 9, and that she knew that working off the clock was contrary to CVS's policy, id. at 10, but that she did not speak to anyone in human resources or use the ethics line because she "didn't have an issue with it at the time," id. at 12.  And Mello testified that "even when [she] didn't clock out, . . . [her] manager would manually change [her] time card to include the break that [she] should have taken but couldn't have because duty called."  Docket # 117-5, at 21.  Meanwhile, Joanne Borden, a CVS Senior Advisor Employee Relations Manager, testified that her "understanding of the Massachusetts law is that the employee needs to be completely relieved of duties" or the meal break should be paid, and that "[y]ou're not completely relieved of duties if you're not able to leave the store."  Docket # 131-1, at 49.  Borden stated that she "communicated to managers clarity around meal breaks and when they should be paid and unpaid."  Id. at 50.

In short, evaluating plaintiffs' claims "depends upon the answers to two questions," Raposo, 293 F.R.D. at 56.  First, were putative class members required to remain in the store during meal breaks?  Second, if putative class members did so, were they required to clock-out?  See id.  Plaintiffs' maintain that CVS's policies allow both questions to be answered in the affirmative.  However, plaintiffs are not alleging that any individual policy is per se illegal; rather that these policies were implemented in a way leading to an illegal practice.  And so, examining the policies on their face does not lead to affirmative answers.  To the extent plaintiffs implicitly allege a common

practice that was illegal, their evidence is insufficient to resolve these inquiries on a class-wide level.  Compare Wal-Mart, 564 U.S. at 358 (finding that plaintiffs' "anecdotal evidence . . . is too weak to raise any inference that all the individual, discretionary personnel decisions are discriminatory"), with Bell v. PNC Bank, Nat'l Ass'n, 800 F.3d 360, 375 (7th Cir. 2015) (finding commonality satisfied when plaintiff "offered evidence that the denial of overtime pay came from a broader company policy and not from the discretionary decisions of individual managers").  Therefore, neither of the proposed classes satisfies the commonality requirement.  See Garcia v. E.J. Amusements of N.H., Inc., 98 F. Supp. 3d 277, 285–86 (D. Mass. 2015) (collecting cases and explaining that "[i]n wage and overtime cases, . . . courts have rejected class certification where a determination of liability would require a burdensome inquiry into each employee's individual circumstances," while "courts have found the commonality requirement met where employees alleged per se illegal wage policies that violated the rights of all class members").

### 2. Typicality and Adequacy

In light of my holding on commonality, which applies to both classes, I do not reach CVS's argument that Mello's claim is not typical of the Second Class or that she cannot adequately represent the Second Class.

### C. Rule 23(b)(3) Predominance Requirement

Although the lack of commonality is sufficient to deny class certification, cf. Raposo, 293 F.R.D. at 57–58, I address the predominance requirement as an independent basis of denial.  See Wal-Mart, 564 U.S. at 368 (Ginsburg, J., concurring

in part and dissenting in part) (suggesting that "the Court imports into the Rule 23(a) determination concerns properly addressed in a Rule 23(b)(3) assessment").

Rule 23(b)(3) requires that "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "[M]atters pertinent to these findings include":

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Id.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997).  "'[T]he predominance criterion is far more demanding,' . . . than the commonality requirement."  In re New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6, 20 (1st Cir. 2008) (first alteration in original) (quoting Amchem, 521 U.S. at 624); see also Comcast, 133 S. Ct. at 1432 ("If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a).").  "Under the predominance inquiry, 'a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.'"  New Motor Vehicles, 522 F.3d at 20 (quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 298 (1st Cir. 2000)).  "Part of

11

the rationale for requiring predominance . . . to bring a class action is to ensure that the action 'will achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" George v. Nat'l Water Main Cleaning Co., 286 F.R.D. 168, 178 (D. Mass. 2012) (quoting Amchem, 521 U.S. at 624).

Here, plaintiffs claim that "[c]ommon questions predominate because all Class Members' claims turn on whether Massachusetts law requires CVS to compensate Shift Supervisors for meal breaks during which CVS required them to remain on store premises." Docket # 116, at 19. As discussed above, even assuming the answer to this question is yes, several questions remain that require individualized inquiries. Specifically, even if the law requires compensating Shift Supervisors for remaining in the store during meal breaks, whether Shift Supervisors were required to stay in the store during these breaks and whether they were compensated for this time varies by plaintiff. That is, the proposed classes are not "sufficiently cohesive to warrant adjudication by representation," Amchem, 521 U.S. at 623.

IV. **Conclusion**

Plaintiffs' Amended Motion for Class Certification (Docket # 115) is DENIED.

| _____July 12 2017_____ | _____/s/Rya W. Zobel_____ |
| DATE | RYA W. ZOBEL |
| | SENIOR UNITED STATES DISTRICT JUDGE |